UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JIMMY L. MARTINEZ | CIVIL ACTION |
| VERSUS | NO. 14-607 |
| JOHNSON & JOHNSON; ETHICON, INC.; ETHICON PRODUCTS; AND ABC CORPORATION | SECTION "N" (5) |

### ORDER AND REASONS

Presently before the Court is Defendants' "Motion for Summary Judgment" (Rec. Doc. 33). On the showing made,

**IT IS ORDERED** that Defendants' motion is **GRANTED**.

### I. Background

Plaintiff Jimmy Martinez's ("Martinez") lawsuit arises from alleged injuries that he suffered after having a PROCEED® Ventral Patch ("PVP") surgically implanted to repair a ventral hernia on March 19, 2013.[1] Post surgery, Martinez experienced discomfort that included pain, poor appetite and a lack of bowel movements. This discomfort caused him to return to the implanting surgeon, Dr. Kappelman, who upon examination discovered liquid leaking from Martinez's surgical incision. Dr. Kappelman ordered his patient admitted on March 26, 2013, to Ochsner West Bank, where Martinez was treated for renal failure and septic shock. The following day, Dr. Kappelman and another surgeon removed the PVP, after reopening the wound and finding a one-centimeter hole in Martinez's colon. Martinez continued to be treated thereafter for necrotizing fasciitis, management

---

[1] A PVP is a flexible laminate mesh device intended for the repair of hernias and other fascial deficiencies.

of fistula, and small bowel resection.

While simultaneously pursuing medical malpractice claims against Dr. Kappelman and Ochsner in Louisiana state court, Martinez filed the instant suit alleging that the PVP was defective, "eroded into the Plaintiff's cecum," and resulted in a perforated bowel. The defendants, Johnson & Johnson and Ethicon, Inc. (collectively "Ethicon"), have filed the instant motion for summary judgment, arguing that Martinez has failed to establish a *prima facie* case of product defect under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. § 9:2800.51 *et seq.*

## II. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Materiality" is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster*

2

*v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3) ("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

### III. <u>Application of the Legal Standard</u>

#### A. Liability Under The Louisiana Products Liability Act

Martinez claims negligence of the defendants in their production, development, design, manufacture, distribution, and marketing of the PVP, in violation of the laws of Louisiana. The LPLA serves as the exclusive theory of liability under Louisiana law for recovering from

manufacturers for injuries caused by their products. La. Rev. Stat. Ann. § 9:2800.52 (West 2015); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997) ("Louisiana law eschews all theories of recovery in this [products liability] case except those explicitly set forth in the LPLA.").[2] The LPLA permits plaintiffs to recover for damages proximately caused by products that are unreasonably dangerous within the meaning of the Act. La. Rev. Stat. Ann. § 9:2800.54 (A) (West 2015). The burden of demonstrating that a particular product was unreasonably dangerous is borne by the plaintiff in a products liability action. *Id*. at § 9:2800.54(D). To satisfy this burden, the plaintiff must prove that the product was unreasonably dangerous due to: (1) defective construction or composition; (2) defective design; (3) inadequate warning; or (4) breach of express warranty. *Id.* at § 9:2800.54 (B). In the case *sub judice*, the plaintiff, Martinez, fails on all four theories to demonstrate or to provide evidence creating a genuine issue of material fact.

**1. Defective Construction or Composition**

First, Martinez argues that the lack of a smooth surface made the PVP defective in its construction or composition. "The 'unreasonably dangerous in construction or composition' provision of the LPLA provides a remedy for damages caused by a product that is defective due to a mistake in the manufacturing process." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002) (citing La. Rev. Stat. Ann. § 9:2800.55 (West 2015)). Proving defective construction or composition requires a plaintiff to "demonstrate that at the time the product left its manufacturer's control, 'the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.'" *Id.*

---

[2] To the extent that Martinez has asserted in his complaint vague, non-LPLA claims of negligence, Ethicon argues that the exclusivity of the Act bars such claims. Martinez offers no rebuttal. The Court, therefore, finds dismissal of these undeveloped claims to be appropriate upon the showing made.

4

In support of his defective construction or composition theory, Martinez relies on the testimony of the implanting surgeon, Dr. Kappelman. A close look at the deposition transcript of Dr. Kappelman, however, reveals that his testimony is not an endorsement of Martinez's claim. While Dr. Kappelman did state that the PVP was "not totally flexible" and "d[id] have a rough surface to a certain degree," he did not testify that its construction or composition deviated from manufacturer's specifications or performance standards, or from other PVP's manufactured by the defendants. Furthermore, although Dr. Kappelman attributed the hole in Martinez's cecum to contact with the PVP, he explained that the intestine is constantly moving back and forth in a motion known as "peristalsis." He further testified that PVP itself had not moved from the location where it had been stitched and that Martinez did not suffer a hernia recurrence. Finally, when pressed on the issue, Dr. Kappelman refused to call the product defective, stating only "I can't say" and "I really do not know."

Dr. Kappelman's inconclusive testimony is insufficient to create a genuine issue concerning the integrity of the product.

**2. Defective Design**

Second, citing little evidentiary support, Martinez argues that the PVP was unreasonably dangerous due to a defective design. However, "Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occured." *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 205 (5th Cir. 2000) (quoting *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000). A plaintiff must show that "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage." La. Rev. Stat. Ann. § 9:2800.56 (West 2015); *see Reeves v. AcroMed Corp.*, 44 F.3d 300, 308 (5th Cir. 1995) ("To

prevail on this [defective design] theory, Louisiana law requires a plaintiff to establish the existence of an alternative safer design for the product."). In this case, Martinez offers no evidence of an alternative safer design, which is fatal to his design defect claim under the LPLA.

### 3. Inadequate Warning

Third, Martinez asserts at the outset of his opposition that the PVP was unreasonably dangerous due to a lack of adequate warning, but he fails to elaborate on this theory or cite evidence in support. The Court is not obligated to search the record for evidence, *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003), and it need consider only that which is cited. Fed. R. Civ. P. 56(c)(3). Therefore, Martinez's claim of inadequate warning is dismissed for want of evidentiary support.

### 4. Breach of Express Warranty

Finally, Martinez argues that statements found in Ethicon's Instructions for Use ("IFU") of the PVP constituted an express warranty. For a breach of express warranty claim to survive summary judgement,

> [A] plaintiff is required to demonstrate, or provide evidence to create a genuine issue of material fact regarding the following: (1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue.

*Caboni v. General Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002). Assuming *arguendo* that the statements in the IFU qualify as express warranties to which the PVP failed to conform, Martinez has not alleged that either he or the surgeon, Dr. Kappelman, relied on the statements in deciding to use the product. As a result of this omission alone, Martinez's breach of warranty is dismissed.

## IV. Conclusion

For the reasons stated herein,

**IT IS ORDERED** that Ethicon's motion for summary judgment (Rec. Doc. 33) is hereby **GRANTED**.

New Orleans, Louisiana, this 30th day of December, 2015.

_____
**KURT D. ENGELHARDT**
**United States District Judge**